## PEOPLE v JACKSON

1. HOMICIDE—MURDER—BYSTANDER—SELF-DEFENSE—MANSLAUGHTER
   —ASSAULT AND BATTERY.

   The unintended killing of an innocent bystander is not murder if
   justifiably committed in self-defense; it may, however, be man-
   slaughter; if *A* in proper self-defense aims at his adversary *B*
   but misses *B* and unintentionally strikes innocent bystander *C*,
   he is not liable for *C's* injury or death unless his conduct, under
   all of the circumstances (including the need to defend himself)
   was reckless with regard to *C* and in such a case he would be
   liable for battery if he merely injures, involuntary manslaugh-
   ter if he kills, *C*.

2. WITNESSES—TRIER OF FACT.

   The trier of fact was not obliged to believe a witness's testimony
   simply because it was not contradicted by another witness.

3. WITNESSES—CREDIBILITY—STATUTES.

   The interest of a witness may always be shown for the purpose of
   drawing in question the credibility of such witness (MCLA
   600.2158).

4. WITNESSES—CREDIBILITY—TRIER OF FACT—JURY—EVIDENCE—IN-
   FERENCES—QUESTION OF LAW.

   The issue of credibility is to be resolved by the trier of fact and a
   jury may disbelieve the most positive evidence, even when it
   stands uncontradicted; even in a case where there is no issue of
   credibility and no showing of interest on the part of the
   witness, the question does not become one of law and still is to
   be decided by the trier of fact where the evidence relied on is
   contradicted by any testimony given in the case or by any facts

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 144, 145, 151.
[2–4] 58 Am Jur, Witnesses § 860 *et seq.*
[5] 40 Am Jur 2d, Homicide § 249.
[6] 29 Am Jur 2d, Evidence § 180.
   58 Am Jur 2d, New Trial §§ 40, 159.
[7] 20 Am Jur 2d, Courts § 183 *et seq.*
[8–10] 53 Am Jur, Trial § 1131 *et seq.*

or circumstances in the case, or where the evidence relied on is
in any way improbable or discredited or any legitimate infer-
ence may be drawn inconsistent with a finding or verdict
directed as a matter of law.

5. Homicide—Self-Defense—Burden of Proof.

Once the issue of self-defense is injected and evidentially sup-
ported, the burden of proof to exclude the possibility that the
killing was done in self-defense, rests on the prosecution and
the Michigan Court of Appeals erred in suggesting that the
defendant had the burden of establishing his defense of self-
defense.

6. Criminal Law—Witnesses—Res Gestae Witness—Waiver—New
Trial—Remand.

Issue of whether defendant is entitled to a new trial because the
prosecutor failed to produce an indorsed res gestae witness may
be pursued by defendant on remand if he wishes, since it is not
perfectly clear whether defendant waived that witness's non-
production and the case is being remanded for other reasons.

7. Courts—Supreme Court—Opinions—Stare Decisis.

A Michigan Supreme Court opinion which has not obtained
signatures of four Justices is not binding under the doctrine of
stare decisis.

8. Criminal Law—Nonjury Case—Findings of Fact.

In criminal cases as well as civil cases a judge who sits without a
jury is obliged to articulate the reasons for his decision in
findings of fact; findings of fact in a nonjury case serve a
function paralleling the judge's charge in a jury case, that of
revealing the law applied by the fact finder.

9. Appeal and Error—Remand—Findings of Fact.

A judge's failure to find the facts does not require remand where
it is manifest that he was aware of the factual issue, that he
resolved it and it would not facilitate appellate review to
require further explication of the path he followed in reaching
the result as, for example, where the only factual issue is
identification.

10. Homicide—Murder—Remand—Findings of Fact—Record—Wit-
nesses.

There is sufficient doubt whether the judge correctly applied the
law to the facts of a nonjury homicide case to require remand
for additional fact finding on the record already made, supple-

mented by an indorsed res gestae witness's testimony if he is produced on remand.

Appeal from Court of Appeals, Division 1, Fitzgerald, P. J., and McGregor and O'Hara, JJ., affirming Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted October 2, 1973. (No. 1 October Term 1973, Docket No. 54,381). Decided December 18, 1973.

41 Mich App 530 reversed.

Robert Jackson was convicted of second-degree murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard A. Poehlman,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *David A. Goldstein),* for defendant on appeal.

LEVIN, J. Robert Jackson shot and killed Jackie (Sonny) Wilson, Jr. during a shoot-out with Richard Holmes.

Michael Lewis testified that Holmes shot first and Jackson then returned Holmes's fire. Wilson was shot in the cross-fire. Jackson was convicted of second-degree murder by the judge who sat without a jury.

Wilson was a friend of Jackson and there is no reason to believe that Jackson intended to kill him. The case was tried on the assumption stated

both by the prosecutor and Jackson's lawyer that Wilson's death was accidental.

The unintended killing of an innocent bystander is not murder if justifiably committed in proper self-defense. It may, however, be manslaughter.

"If A in proper self-defense aims at his adversary B but misses B and unintentionally strikes innocent bystander C, he is not liable for C's injury or death unless his conduct, under all of the circumstances (including the need to defend himself) was reckless with regard to C. In such a case he would be liable for battery if he merely injures, involuntary manslaughter if he kills, C." LaFave and Scott, Criminal Law, p 396.[1]

## I

Jackson claims that since the uncontradicted testimony was that Holmes shot first, he was legally justified in firing back and is not criminally responsible for Wilson's death.

Lewis testified that the shoot-out occurred when Jackson, Wilson, and Lewis went to Holmes's residence to purchase narcotics. When Holmes responded to the doorbell, Wilson and Lewis were on the porch and Jackson was on the stairs with a sawed-off shotgun concealed under his clothing. Holmes refused to do business with Wilson because he did not recognize Lewis. Wilson then reached into his pocket. Holmes jumped back. Lewis said Holmes fired and Jackson returned the fire instantly killing Wilson and seriously injuring Holmes.

The trier of fact was not obliged to believe Lewis's testimony simply because it was not con-

---

[1] *Similarly, see* Perkins, Criminal Law (2d ed), p 824; *Pinder v State,* 27 Fla 370; 8 So 837 (1891); *Hobbs v State,* 68 Tex Crim R 593; 151 SW 809 (1912); *Henwood v People,* 54 Colo 188; 129 P 1010 (1913).

tradicted by another witness.[2] There was ample
reason to doubt Lewis's credibility. He could have
been prosecuted on the theory that he was in-
volved with Jackson in a concert of action which
involved the carrying by Jackson of a weapon
which culminated in Holmes's injury and Wilson's
death.

## II

The Court of Appeals erred in suggesting that
the defendant had the burden of establishing his
defense of self-defense ("Thus, the defendant has
not met his burden of establishing his defense of
self-defense." *People v Jackson,* 41 Mich App 530,
536-537; 200 NW2d 465 [1972]). The Court of
Appeals was not, however, the trier of fact. Had

---

[2] The interest of a witness may always be shown "for the purpose of
drawing in question the credibility of such witness". MCLA 600.2158;
MSA 27A.2158; 5 Callaghan's Michigan Pleading & Practice (2d ed),
§ 37.205, pp 557–558. *See Goppelt v Burgess,* 132 Mich 28, 30; 92 NW
497 (1902); *Ball-Barnhart-Putman Co v Lane,* 135 Mich 275; 97 NW
727 (1903).

The issue of credibility is to be resolved by the trier of fact. As
stated in *Woodin v Durfee,* 46 Mich 424, 427; 9 NW 457 (1881), "[a]
jury may disbelieve the most positive evidence, even when it stands
uncontradicted." *Similarly, see Crampton v Crampton,* 205 Mich 233,
241; 171 NW 457 (1919); *Cuttle v Concordia Mutual Fire Ins Co,* 295
Mich 514, 519; 295 NW 246 (1940); *Hughes v John Hancock Mutual
Life Insurance Co,* 351 Mich 302, 308; 88 NW2d 557 (1958); *Baumgart-
ner v Ham,* 374 Mich 169, 174; 132 NW2d 159 (1965); *Wolfgram v
Valko,* 375 Mich 421, 435; 134 NW2d 649 (1965).

Even in a case where there is no issue of credibility and no showing
of interest on the part of the witnesses, the question does not become
one of law and still is to be decided by the trier of fact where the
evidence relied on is contradicted "by any testimony given in the case
* * * or by any facts or circumstances in the case", or where the
evidence relied on is "in any way improbable or discredited" or any
legitimate inference may be drawn inconsistent with a finding or
verdict directed as a matter of law. *Boudeman v Arnold,* 200 Mich
162, 164; 166 NW 985; 8 ALR 789 (1918). *Similarly, see Hagan v
Chicago, D & C G T J R Co,* 86 Mich 615; 49 NW 509 (1891);
*Kaminski v Grand Trunk W R Co,* 347 Mich 417, 428; 79 NW2d 899
(1956); *Green v Detroit U R Co,* 210 Mich 119, 125; 177 NW 263
(1920).

the judge indicated that he was under the impression that the defendant had the burden of proof (or had so instructed a jury) a new trial probably would be required as once the issue of self-defense is injected and evidentially supported, "[t]he burden of proof to exclude the possibility that the killing was done in self-defense, rests on the prosecution." *People v Stallworth,* 364 Mich 528, 535; 111 NW2d 742 (1961).

### III

Jackson also asserts that he is entitled to a new trial because the prosecutor failed to produce Richard Holmes who was an indorsed res gestae witness. At the preliminary examination, the tendency of Holmes's testimony was that Jackson was the aggressor. Thus, if called as a witness at the trial, Holmes probably would have contradicted Lewis's trial testimony that Jackson was only returning Holmes's fire.

Claiming that Holmes was out of the state and he had made diligent efforts to produce him, the prosecutor attempted to read Holmes's preliminary examination testimony at the trial. The judge ruled that the effort to produce Holmes was inadequate and refused to permit his testimony to be read.

Jackson now asserts that the failure to produce Holmes deprived him of a fair trial. At the trial, rather than insisting on Holmes's presence, Jackson's lawyer objected to the judge's granting the prosecutor a short continuance to permit a further effort to produce Holmes. It is apparent from Holmes's preliminary examination testimony why Jackson did not wish to have him produced.

Nevertheless, since it is not perfectly clear

whether Jackson waived Holmes's nonproduction and, as will appear, we are remanding for other reasons, Jackson may pursue this issue on remand if he wishes in accordance with the procedures set forth in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973).

## IV

In *People v Thomas,* 387 Mich 368; 197 NW2d 51 (1972), the plurality opinion stated: "[N]o special findings of fact are required in judge-tried criminal cases." This opinion was signed by three Justices, one Justice concurring in the result. The dissenting opinion, signed by three Justices, stated that GCR 1963, 517.1, requiring fact finding in bench trials, applies equally to civil and criminal cases.

Since neither opinion obtained four signatures, neither is binding under the doctrine of stare decisis.

We are now of the opinion that in criminal cases as well as civil cases a judge who sits without a jury is obliged to articulate the reasons for his decision in findings of fact. Findings of fact in a nonjury case serve a function paralleling the judge's charge in a jury case, that of revealing the law applied by the fact finder.[3]

In this case there is considerable doubt regarding the law applied by the fact finder. During colloquy with Jackson's lawyer, the judge asked,

---

[3] A judge's failure to find the facts does not require remand where it is manifest that he was aware of the factual issue, that he resolved it and it would not facilitate appellate review to require further explication of the path he followed in reaching the result as, for example, where the only factual issue is identification. *See People v Green,* 32 Mich App 482; 189 NW2d 122 (1971). *See, also, People v George Scott,* 21 Mich App 217–218; 175 NW2d 312 (1970).

—"How could self-defense be a defense in this case?"

—"There is no suggestion that the *deceased* here fired anything." (Emphasis supplied.)

—"Suppose you shoot in self-defense and you accidentally killed somebody else?"

—"Suppose you shoot in self-defense and you do it so negligently that you kill somebody else?"

The judge did not indicate in the findings he stated a short time later how he resolved the questions which were troubling him.

Although, as indicated above, the judge was not obliged to believe Lewis's testimony exculpating Jackson, the judge did not say that he found against Jackson because he disbelieved Lewis or because he concluded that excessive force was used by Jackson.

The judge recited in his findings that at the door Holmes expressed some doubts concerning the unknown Lewis, and then Jackson drew a shotgun and fired the fatal shot killing Wilson. "There is no question, *therefore,* that we do have here a felonious homicide". (Emphasis supplied.)

It would not, however, have been felonious homicide if Jackson acted justifiably, in self-defense, even though Wilson, although "innocent," was killed accidentally.

There is sufficient doubt whether the judge correctly applied the law to the facts of this case to require remand for additional fact finding on the record already made, supplemented by Holmes's testimony if he is produced on remand.

Remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

T. M. KAVANAGH, C. J., and T. E. BRENNAN, T. G. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with LEVIN, J.